**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:20-cr-00368-KDB-DSC**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM OF DECISION AND ORDER** |
| | ) | |
| **MARK VAN EPERN,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**THIS MATTER** is before the Court on Defendant's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 79] and Defendant's Amended Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 81].

## I. BACKGROUND

Beginning on February 23, 2012, Defendant Mark Van Epern used hidden cameras in the bedroom of a minor victim to capture naked images and videos of her. [Doc. 24 at ¶¶ 10, 13, 16, 18: Presentence Investigation Report (PSR)]. Defendant excerpted still images from the videos, which he cropped to focus on the minor victim's genitals. United States v. Van Epern, 2025 WL 1589255, at *1 (4th Cir. Jun. 5, 2025). The images showed the minor victim's face, breasts, vagina, and anus. [Doc. 24 at ¶ 13]. Defendant compiled the images in a Word document created on June 30, 2014, which he stored on a flash drive. [Id. at ¶¶ 10, 11, 13]. On this date, the minor victim was 16 years old. [Id. at ¶ 13]. Defendant also created a video of himself ejaculating onto a photo of what appears to be the face of the minor victim on the naked body of an unknown female. [Id. at ¶ 17]. In October 2018, Defendant purchased new spyware cameras to use to secretly record the minor victim. [Id. at ¶ 12]. In or around November 2018, the Huntersville Police Department

("HPD") seized various devices relevant to the investigation. [Id. at ¶ 14]. On February 25, 2019, a federal search warrant was executed at the FBI Charlotte Field Office for the devices seized by the HPD as well as at locations relevant to the investigation. [Id. at ¶ 14]. The evidence seized included the images of the minor victim and other evidence of Defendant's purchase and use of the hidden recording devices. [Id. at ¶¶ 15-17].

On October 21, 2020, Defendant was charged in a Bill of Indictment with one count of production of child pornography in violation of 18 U.S.C. §§ 2251(a) and 2251(e). [Doc. 3: Bill of Indictment]. Defendant agreed to plead guilty pursuant to a written Plea Agreement. [Doc. 14: Plea Agreement]. The Plea Agreement set out the mandatory minimum and maximum sentences of 15 and 30 years for this charge, respectively. [Id. at ¶ 4]. The Plea Agreement recommended a base offense level of 32, a two-level enhancement based on the age of the minor victim, and a two-level enhancement based on Defendant's relationship to the minor victim. [Id. at ¶ 7]. Defendant stipulated there was a factual basis for his guilty plea and that he had read and understood the Factual Basis filed with the Plea Agreement. [Id. at ¶ 10]. The Factual Basis, in relevant part, provided as follows:

> 1. That on or about and between January 1, 2020 to on or about June 30, 2024, in Mecklenburg County, the Defendant employed, used, persuaded, induced, enticed, or coerced, and attempted to employ, use, persuade, induce, entice, or coerce the victim to take part in sexually explicit conduct for the purpose of producing a visual depiction of such conduct; and
>
> 2. at the time the visual depiction was created the victim was a minor; and
>
> 3. the defendant created the visual depiction using materials that have been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means.

[Doc. 15 at 1: Factual Basis]. Defendant waived "any claim that the admitted conduct does not fall within the scope of the statute(s)." [Id. at ¶ 16]. Defendant also waived his rights to contest his conviction and/or sentence through appeal or post-conviction action, including pursuant to 28 U.S.C. § 2255, except for claims based on ineffective assistance of counsel or prosecutorial misconduct. [Id.].

On July 6, 2022, Magistrate Judge David C. Keesler conducted Defendant's plea hearing. [Doc. 62: Plea Tr.]. The Magistrate Judge read the charge from the Bill of Indictment to the Defendant and reviewed the maximum and minimum penalties. [Id. at 4-6]. Defendant testified that he had discussed the charge and the possible penalties with his attorney and understood them. [Id. at 6]. Defendant testified that he was, in fact, guilty of the crime charged. [Id. at 9]. Defendant testified that he spoke with his attorney regarding how the U.S. Sentencing Guidelines might apply to his case and that he understood that the District Judge would be unable to determine his sentence until a presentence report was prepared. [Id. at 7]. Defendant also testified that he understood that in some circumstances he may receive a sentence that is higher or lower than that called for by the guidelines. [Id.]. Defendant testified that he understood that he would still be bound by his plea even if the sentence is more severe than he expects or the District Judge did not accept the Government's recommendation. [Id.].

The Government reviewed the terms of the Plea Agreement, including Defendant's stipulation to the factual basis. [Id. at 9-12]. Defendant testified that he "ha[d] been over [his] plea agreement carefully with [his] lawyer." [Id. at 13]. He testified that he understood and agreed with its terms. [Id.]. Defendant also testified that he had read, understood, and agreed with the Factual Basis and discussed it with his attorney. [Id. at 14]. Defendant testified that no one made him any promises of leniency or a light sentence to entice him to plead guilty. [Id. at 14-15].

Defendant testified that he had enough time to discuss any possible defenses he might have to the charge with his attorney and that he was satisfied with his attorney's services. [Id. at 15]. Defendant testified that he had heard and understood all parts of the proceeding and still wished to plead guilty. [Id.]. Defendant's attorney stated that he had reviewed Defendant's case and the terms of the plea agreement with Defendant and that he was satisfied that Defendant "understands these things and knows what he's doing." [Id.].

The Magistrate Judge found that Defendant's guilty plea was "voluntarily and knowingly made and that the defendant understands the charges, potential penalties and consequences of his plea." [Id. at 17]. The Magistrate Judge further found that "the defendant's plea is supported by an independent basis in fact." [Id.].

Before sentencing, a probation officer prepared a PSR. [Doc. 24]. The probation officer recommended, consistent with the Plea Agreement, a base offense level of 32, and two two-level increases for the age of the victim and the Defendant's relationship to the victim, respectively. [Id. at ¶¶ 31-33]. With a three-level reduction for acceptance of responsibility, the recommended total offense level was 33. [Id. at ¶¶ 39-41]. With a Criminal History Category of I, the recommended guidelines sentence was 135 to 168 months. [Id. at ¶¶ 50, 70]. Because, however, the statutorily required minimum sentence of 15 years was greater than the guidelines maximum, the guidelines term of imprisonment was 180 months. [Id. at ¶ 70].

At sentencing, the Court asked the parties if they agreed that there was a factual basis for the plea and "that the Court may rely on the offense conduct set forth in the [PSR] to establish the factual basis[.]" [Doc. 39 at 2: Sentencing Tr.]. The parties so stipulated. [Id.]. "Based on that stipulation and the offense conduct set forth in the [PSR], the defendant's plea of guilty before the

magistrate judge, and the defendant's admissions," the Court found a factual basis for Defendant's guilty plea. [Id. at 2-3].

The Court adopted the PSR without change and sentenced Defendant to a term of imprisonment of 210 months and lifetime supervision on release. [Id. at 36; Doc. 30 at 2-3: Judgment; Doc. 31 at 1: Statement of Reasons]. The Court varied above the guidelines range in sentencing the Defendant, citing the serious nature of the offense, the duration of the conduct, and the efforts the Defendant took to conceal it. [Id. at 3]. The Court also considered the Defendant's future dangerousness and rehabilitation efforts. [Id.].

Defendant appealed his conviction. He challenged *inter alia* the factual basis of his plea. United States v. Van Epern, No. 21-4408, 2025 WL 1589255, at *1 (4th Cir. Jun. 5, 2025) (unpublished decision). Defendant argued that his conviction should be vacated because there was an insufficient factual basis to support his plea. Id. at *2. The Fourth Circuit disagreed.

Section 2251(a) "criminalizes using a minor to engage in sexually explicit conduct for producing a visual depiction of such conduct, where the visual depiction was made using materials with a nexus to interstate commerce." Id. (citing 18 U.S.C. § 2251(a)). "'[S]exually explicit conduct' includes 'actual or simulated … lascivious exhibition[1] of the anus, genitals, or pubic area of any person.'" Id. (quoting 18 U.S.C. § 2256(2)(A)). Defendant argued that "the videos he stipulated to in the PSR do not constitute a lascivious exhibition." Id.

In deciding that the videos Defendant admitted to creating easily qualified as a "lascivious exhibition," the Fourth Circuit relied on recent Circuit precedent. Id. In United States v. Deritis, the Fourth Circuit explained that "using a hidden camera to capture naked images of a minor's genitals does not present a close factual question for violation of § 2251." Van Epern, 2025 WL

[1] Congress did not define the phrase "lascivious exhibition." United States v. Sanders, 107 F.4th 234, 261 (4th Cir. 2024).

1589255, at *2 (citing Deritis, 137 F.4th 209, 218 (4th Cir. May 14, 2025)). Also relying on United States v. Courtade, 929 F.3d 186, 193 (4th Cir. 2019), *as amended* (July 10, 2019), which held that a "video objectively depict[ed] a 'lascivious exhibition'" where the defendant relied on "deceit [and] manipulation" to film a minor's genitals, the Fourth Circuit concluded "there is no doubt that [Defendant's] conduct is an offense pursuant to the statute." Id. at *2. "This conclusion is all the more obvious given that [Defendant] admitted to conduct that leaves no doubt as to whether the images he captured were 'intended or designed to elicit a sexual response.'" Id. (quoting Sanders, 107 F.4th at 262 (explaining that whether a visual depiction was "intended or designed to elicit a sexual response [in the viewer]" is a relevant consideration for "determining whether the visual depiction is lascivious") (relying on United States v. Dost, 636 F. Supp. 828, 832 (S.D. Cal. 1986)[2]).

The Fourth Circuit held, therefore, "the district court committed no error – plain or otherwise – in holding that [Defendant's] stipulated conduct provided an adequate factual basis for his plea to production of sexually explicit conduct involving a minor." Id. at *3. Defendant's conviction and sentence were affirmed. Id.

Defendant timely moved to vacate his conviction, although not on the proper form. [Doc. 79; see Doc. 80]. Defendant's amended motion to vacate correcting this deficiency is now pending

---

[2] In Sanders, the defendant challenged the jury instructions on whether the subject depiction qualified as a "lascivious exhibition," claiming that the district court erred in relying on the Dost factors in instructing the jury. 107 F.4th at 260. In Dost, a California district court developed six factors to aid a jury in deciding whether a depiction qualified as a "lascivious exhibition." Sanders, 107 F.4th at 261. The sixth factor considers "whether the visual depiction is intended or designed to elicit a sexual response in the viewer." Id. (citing Dost, 636 F. Supp. at 832). In Sanders, the defendant argued that the sixth factor invited the jury to convict on "a finding that visual depictions subjectively elicited a sexual response in the viewer." Id. at 262. The Fourth Circuit upheld the challenged instruction, finding "nowhere does [it] provide that the subjective arousal of the viewer is the relevant inquiry. [Rather], that factor explicitly provides that the jury is to look at 'whether the *visual depiction* is *intended or designed* to elicit a sexual response." Id. at 262 (citation omitted).

before the Court. [Doc. 81]. As primary grounds for relief, Defendant claims that (1) he received ineffective assistance of counsel because his attorney failed to investigate the law and misadvised Defendant that the video he produced violated § 2251(a) and that Defendant had no choice but to accept a plea deal; and (2) that Defendant's guilty plea is invalid because his conduct did not violate § 2251(a) because the minor was unaware of being filmed and "display[ed] no sexualized conduct." [Id. at 4-5; see Doc. 81-1].

Defendant also argues that his attorneys failed to preserve the issue that his conduct did not violate § 2251(a) and failed to leverage the issue to negotiate a better plea deal. [Doc. 81-1 at 44]. Rather, he claims they told him that negotiating a better plea deal was not an option and that he should accept the plea deal because the Court would not sentence him to more than 15 years' imprisonment.[3] [Id.]. Finally, Defendant argues that he received ineffective assistance because his appellate attorney failed to raise "direct precedent from the Supreme Court, which would have been a dead-bang winner" on the "lascivious exhibition" issue. [Id.].

For relief, Defendant wants his conviction vacated. [Id. at 12; Doc. 81-1 at 41].

This matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments

[3] Defendant also alleges that his original attorney, who lacked federal criminal experience, associated a federal criminal defense attorney without Defendant's knowledge or consent and that Defendant was double billed for services while his original attorney was "just a spectator." [Doc. 81-1 at 43]. These allegations do not implicate Defendant's rights under § 2255 and will not be further addressed here.

presented by Defendant can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

### A. Relitigation Bar

Defendant's claims under § 2255 are predicated on his argument that the videos he created did not violate § 2251(a). [See Docs. 81, 81-1]. The Fourth Circuit rejected this contention on direct appeal, Van Epern, 2025 WL 1589255, at *2, and Defendant may not relitigate it here. That is, a defendant "may not circumvent a proper ruling … on direct appeal by re-raising the same challenge in a § 2255 motion." United States v. Linder, 552 F.3d 391, 396-97 (4th Cir. 2009); Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (per curiam) (claims considered on direct review may not be recast "under the guise of collateral attack"). As such, the Court will deny Defendant's motion on this ground in the first instance to the extent his claims rely on this contention.

### B. Ineffective Assistance of Counsel

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'"

Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

To establish prejudice in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). In evaluating claims under § 2255, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). "[C]ourts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." United States v. Lemaster, 403 F.3d 216, 216, 221-22 (4th Cir. 2005). Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss … any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Id. at 221-22.

When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea." United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010). Thus, a knowing and voluntary guilty plea "forecloses federal collateral review" of prior constitutional deprivations, including allegations of ineffective assistance of counsel that do not affect the voluntariness of the plea. See Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1294-96 (4th

Cir. 1992); accord United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992); Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983). A guilty plea is valid when it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Burket v. Angelone, 208 F.3d 172, 190 (4th Cir. 2000) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

To begin, counsels' advice that the video Defendant produced violated § 2251(a) and that he should accept a plea deal fell easily within the bounds of reasonable professional assistance. Advice to the contrary, rather, would have presented a question for this Court. Moreover, his attorneys were not ineffective for failing to preserve a meritless issue for appeal or in failing to "leverage" the issue for a better plea. See Truesdale v. Moore, 142 F.3d 749, 756 (4th Cir. 1998). Of note, on appeal, the Fourth Circuit stated that it would have found that Defendant's stipulated conduct provided an adequate factual basis for his guilty plea under any standard of review. Van Epern, 2025 WL 1589255, at *3. Finally, the law does not support the position Defendant advances here; there was nothing more for his attorneys to leverage in obtaining a more favorable plea.

The Court rejects Defendant's claim based on his attorneys advising him to accept the plea deal because negotiating a better plea was not an option and the Court would not sentence him to more than 15 years' imprisonment. Defendant does not show any reasonable probability that he would have rejected the plea without this advice and proceeded to trial. See Meyer, 506 F.3d at 369. In fact, he does not even request a trial now. Moreover, Defendant admitted to being guilty of the crime charged. [Id. at 9]. While not determinative, Defendant's guilt of the crime charged certainly makes any claim now that he would have rejected the plea and proceeded to trial less reasonable.

Moreover, at Defendant's plea hearing, he testified that he had spoken with his attorney regarding how guidelines might apply to his case and that he understood that the Court would be unable to determine his sentence until a presentence report was prepared, that he understood that he may receive a sentence that is higher or lower than called for by the guidelines, that he understood that he would still be bound by his plea even if the sentence was more severe that expected, and that no one made any promises of leniency or a light sentence to entice him to plead guilty. [Doc. 62 at 7, 14-15]. Defendant is bound by these admissions absent extraordinary circumstances, which he has not shown. Lemaster, 403 F.3d at 221-22.

Furthermore, Defendant has not shown that the Government offered or would have offered a better plea deal had Defendant chosen to reject the plea deal at issue. And counsel is not ineffective for failing to secure a plea deal his client is willing to accept. See Weatherford v. Bursey, 429 U.S. 545, 561 (1977) (recognizing "there is no constitutional right to plea bargain"). This claim, therefore, is also rejected.

Defendant also contends he received ineffective assistance because his appellate attorney failed to raise Williams on appeal in support of Defendant's challenge to the factual basis for his guilty plea. The right to the effective assistance of counsel extends to direct appeal. Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (*en banc*). To establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, a petitioner must normally demonstrate both deficient performance and prejudice, meaning that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. Effective assistance of appellate counsel "does not require the presentation of all issues on appeal that may have merit." Smith v. Murray, 477 U.S. 527, 536 (4th Cir. 2014) ("winnowing out weaker arguments on appeal and focusing on those more likely to prevail ... is the hallmark of effective

appellate advocacy") (internal quotations marks and citations omitted). However, appellate counsel may render deficient performance by failing to raise "issues [that] are clearly stronger than those presented." United States v. Mason, 774 F.3d 824, 828-29 (4th Cir. 2014). "The ineffective assistance inquiry therefore requires a court to compare the strength of an issue not raised on direct appeal ... with the strength of the arguments that were raised." United States v. Allmendinger, 894 F.3d 121, 126 (4th Cir. 2018). To show prejudice, a petitioner must show a "reasonable probability ... he would have prevailed on his appeal" but for his counsel's unreasonable failure to raise an issue. Smith v. Robbins, 528 U.S. 259, 285–86 (2000); see also United States v. Mannino, 212 F.3d 835, 845–46 (3d Cir. 2000) ("The test for prejudice under Strickland is not whether petitioners would likely prevail upon remand, but whether we would have likely reversed and ordered a remand had the issue been raised on direct appeal.").

The Court rejects Defendant's claim of ineffective assistance of appellate counsel. Williams does not undermine the Fourth Circuit's conclusion that there was a factual basis to support Defendant's guilt under § 2251(a). Rather, in Williams, the defendant argued that the pandering and solicitation statute, § 2252A(a)(3)(B), was unconstitutionally overbroad. This provision prohibits a person from *inter alia* knowingly pandering material containing "a visual depiction of an actual minor engaging in sexually explicit conduct." 553 U.S. at 289-90 (quoting § 2252A(a)(3)(B)). As here, the definition of "sexually explicit conduct" includes a "lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2)(A). The Eleventh Circuit sided with the defendant, finding in part that the statute could apply to someone who subjectively believes that an innocuous picture of a child is "lascivious." Williams, 553 U.S. at 301.

The Supreme Court disagreed. It concluded that for the statute to apply, "[t]he defendant must believe that the picture contains certain material, and that material in fact (and not merely in his estimation) must meet the statutory definition." Id. Moreover, "[w]here the material at issue is a harmless picture of a child in a bathtub and the defendant, knowing that material, erroneously believes that it constitutes a 'lascivious exhibition of the genitals,' the statute has no application." Id. This holding does not undermine the decision on Defendant's appeal. To be sure, on appeal, the Fourth Circuit found a sufficient factual basis for a guilty plea to a production charge. The Fourth Circuit did not question whether the factual basis was sufficient to show that Defendant was in fact sexually aroused or gratified by the images he produced. Rather, after deciding that the videos he captured constituted a "lascivious exhibition," it noted that Defendant's admitted conduct left "no doubt as to whether the images he captured were 'intended or designed to elicit a sexual response.'" Van Epern, 2025 WL 1589255, at * 2 (quoting Sanders, 107 F.4th at 262). The images Defendant captured were not harmless pictures of a child in a bathtub that some third party could view as lascivious. They were stills from secretly recorded videos of the minor victim intended and designed at the time of their making to elicit a sexual response. They met the statutory definition of "lascivious exhibition." Thus, there is no reasonable probability that Defendant would have prevailed on appeal had appellate counsel relied on Williams.

Additionally, Defendant does not argue that his appellate counsel failed to pursue a claim on direct appeal. Rather, Defendant claims he failed to cite particular precedent in support of his claim. The Fourth Circuit could have relied on Williams to overturn Defendant's conviction regardless of whether cited by Defendant, as Appellant, or not.

For these reasons, the Court will also dismiss this claim.

### C. Validity of Plea

Finally, Defendant argues that his guilty plea is invalid because his conduct did not violate § 2251(a) because the minor was unaware of being filmed and "display[ed] no sexualized conduct." [Doc. 81 at 5]. This ground for relief fails. As admitted previously by the Defendant and as found on appeal, Defendant's conduct violated § 2251(a). Defendant's secret recording of his minor victim while naked in a bathroom is criminalized by § 2251(a). That his unknowing minor victim did not display sexualized conduct in these videos is irrelevant where Defendant nonetheless intended and designed the images to elicit a sexual response. There is nothing invalid about Defendant's guilty plea. Moreover, a guilty plea is valid when it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant," Burket, 208 F.3d at 190, which it certainly did here. The Court, therefore, denies Defendant's motion on this ground.

## IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's Section 2255 motion to vacate.

The Court further finds that Petitioner has not made a substantial showing of a denial of a constitutional right. See generally 28 U.S.C. § 2253(c)(2); see also Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong") (citing Slack v. McDaniel, 529 U.S. 473, 484-85 (2000)). Petitioner has failed to demonstrate both that this Court's dispositive procedural rulings are debatable, and that the Motion to Vacate states a debatable claim of the denial of a constitutional right. Slack v. McDaniel, 529 U.S. at 484-85.

As a result, the Court declines to issue a certificate of appealability. See Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 79] is **DISMISSED** as moot and Defendant's Amended Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 81] is **DENIED** and **DISMISSED**.

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability.

**IT IS SO ORDERED**.

Signed: October 15, 2026

Kenneth D. Bell
United States District Judge